1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

CHARLIE YOUNG,

                  Plaintiff,

vs.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

                Defendant.

2:22-cv-00420-VCF

**ORDER**

MOTION FOR REVERSAL AND/OR REMAND [ECF
NO. 17]; MOTION TO AFFIRM [ECF NO. 21]

      This matter involves Plaintiff Charlie Young's appeal from the Administrative Law Judge's ("ALJ") final decision denying his social security benefits. Before the Court are Young's Motion for Reversal and/or Remand (ECF No. 17) and the Commissioner's Cross-Motion to Affirm and Response (ECF Nos. 21, 22). For the reasons stated below, the Court denies Plaintiff's Motion to Remand and grants the Commissioner's Cross-Motion.

**STANDARD OF REVIEW**

      The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. Const. amend. V. Social security claimants have a constitutionally protected property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). When the Commissioner of Social Security renders a final decision denying a claimant's benefits, the Social Security Act authorizes the District Court to review the Commissioner's decision. *See* 42 U.S.C. § 405(g); 28 U.S.C. § 636(b) (permitting the District Court to refer matters to a U.S. Magistrate Judge).

The District Court's review is limited. *See Treichler v. Comm'r of SSA,* 775 F.3d 1090, 1093 (9th Cir. 2014) ("It is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.") The Court examines the Commissioner's decision to determine whether (1) the Commissioner applied the correct legal standards and (2) the decision is supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is defined as "more than a mere scintilla" of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Under the "substantial evidence" standard, the Commissioner's decision must be upheld if it is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938) (defining "a mere scintilla" of evidence). If the evidence supports more than one interpretation, the Court must uphold the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Commissioner's decision will be upheld if it has any support in the record. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1988) (stating the court may not reweigh evidence, try the case de novo, or overturn the Commissioner's decision if the evidence preponderates against it).

## DISCUSSION

The Administrative Law Judge ("ALJ") followed the five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520. The ALJ concluded that Plaintiff had engaged in substantial gainful activity from January 2015 to December 2015. (AR[1] at 38).  But the ALJ noted that there had been continuous 12-month periods where the Plaintiff did not engage in substantial gainful activity. (*Id.*). The ALJ found Plaintiff had three severe impairments which "significantly limit the ability to perform basic work activities as required by SSR 85-28." (*Id.*).  These were: post-traumatic stress disorder, schizophrenia, and depressive disorder. (*Id.*). The ALJ concluded Plaintiff's back pain, neck pain, and pain his left arm did not rise to the level of severe because of the

---

[1] The Administrative Record ("AR") is found at ECF Nos. 14-1 through 14-4.

conservative nature of Plaintiff's treatment for that pain and mild objective physical examination and diagnostic findings. (*Id.* at 39). The ALJ found Plaintiff's impairments did not meet or medically equal the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*).

The ALJ concluded Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels. *Id.*). The ALJ found that the claimant could understand, remember, and carry out simple repetitive tasks with concentration, persistence. Plaintiff can have occasional contact with others, and would be able to interact appropriately in brief, casual encounters with the public and co-workers. The ALJ concluded that the Plaintiff could respond appropriately to nonconfrontational feedback and supervision. *Id.* The ALJ found Plaintiff cannot perform any past relevant work, but can perform other jobs that exist in significant numbers in the national economy. (*Id.* at 34-35). The ALJ also found that Plaintiff meets the insured status requirements of sections 216(i) and 223 of the Social Security Act. (*Id.* at 38). Overall, the ALJ concluded that Plaintiff was not under a disability within the meaning of the Social Security Act from January 5, 2014 through the date of the decision on February 5, 2021. (*Id.* at 45-46).

Plaintiff challenges the ALJ's conclusions on the following grounds: 1) whether the ALJ improperly defined non-confrontational supervision as regular feedback and supervision, 2) whether the ALJ wrongly discounted Dr. Ajayi's findings that Plaintiff was expected to have two days of absenteeism per month. (ECF No. 17 at 11, 15), and 3) whether the ALJ failed to properly consider the period when Plaintiff complained that his neck and back pain was worse. (ECF No. 17 at 11, 15, 16-17).

**I. Whether the ALJ improperly defined non-confrontational supervision as normal supervision.**

Plaintiff argues that the ALJ's reference to regular feedback and supervision "eviscerated the limitation to nonconfrontational feedback and supervision." ECF No. 17 at 11.

Plaintiff argues that the ALJ defining nonconfrontational feedback as normal is not consistent with the actual meaning of the word.  *Id* at 11-14.   Plaintiff states that in this case, "[c]onfrontation has the

same meaning used in Merriam-Webster [and] in the Constitution", which is "just plain face-to-face confrontation" that is "comparative" with "quiet listening, questioning, and answering." *Id* at 13. Relying on his definition of "confrontation" to mean "face-to-face" and "comparative," Plaintiff argues that because the RFC limited him to nonconfrontational (i.e. non-face-to-face or non-comparative) feedback and supervision, he cannot work because receiving "face-to-face or comparative instruction, feedback, or criticism" is an "essential function of work." *Id* at 14.  Plaintiff based his argument on his chosen definitions for "confrontation."

The Commissioner states that Plaintiff's argument is flawed.  The Oxford University Press has a definition for "nonconfrontational" — "[t]ending to deal with situations calmly and diplomatically; not aggressive or hostile." Definition of nonconfrontational, Oxford University Press, available at https://www.lexico.com/en/definition/nonconfrontational (last accessed August 10, 2022).

During the examination of the vocational expert, the ALJ defined "nonconfrontational feedback and supervision" as "just regular feedback and supervision." AR 73-74.  In the findings of fact, the ALJ gave detailed explanation on the non-confrontational feedback and supervision in this case.  The ALJ weighed all of plaintiff's medical record and found that the opinions of Dr. O'Neil and Dr. Davis were more persuasive.  Dr. O'Neil and Dr. Daivs stated that "with respect to supervisors, they indicated that the [plaintiff] would be able to respond appropriately to non-confrontational feedback and supervision, and that the working environment should limit continuous and prolonged contact with others." AR 48. Dr. O'Neil and Dr. Davis stated that the plaintiff could travel, avoid workplace hazards, and set realistic goals independently (Exhibits 3A/11, 4A/11, 7A/11-12, and 8A/11-12). *Id*.

The ALJ stated that Plaintiff has post-traumatic stress disorder ("PTSD").  AR 38.  PTSD "is a mental health condition that's triggered by a terrifying event" and its symptoms can include  "flashbacks, nightmares and severe anxiety[.]"   Given PTSD's symptoms and triggers, the ALJ stated that Plaintiff was limited to  nonconfrontational feedback and supervision.  The ALJ stated that plaintiff has the residual

functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can understand, remember, and carry out simple repetitive tasks with concentration, persistence, and pace for such. He can have occasional contact with others, and would be able to interact appropriately in brief, casual encounters with the public and co-workers, and respond appropriately to non-confrontational feedback and supervision.  AR 46.

The ALJ did not error when determining that "nonconfrontational" feedback and supervision means "regular" feedback and supervision.

The opinion that Plaintiff's supervision should be "nonconfrontational feedback and supervision" was a recommendation, not a specific functional limitation. AR 73-74.  (emphasis added). The opinion also reflects that Plaintiff can interact with co-workers and supervisors. *Id.* An ALJ is not required to address physician recommendations regarding conditions that might be optimal but are not necessary for a claimant to work. *See Harms v. Berryhill*, 692 F. App'x 861, 862 (9th Cir. 2017) ("An examining psychologist's and a reviewing psychologist's recommendations regarding a supportive work setting did not amount to concrete work-related limitations in function that the [ALJ] was required to include in his finding of the claimant's [RFC]."); *Valentine*, 574 F.3d at 691-92 (physician's opinion that claimant "is less likely to have difficulty with" certain tasks was a recommendation, not a statement that claimant was only capable of the recommended tasks).

The Court notes that RFC is an administrative finding, not a medical determination, and need not match any physician's opinion. *See* 20 C.F.R. § 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as ... your residual functional capacity .. the final responsibility for deciding these issues is reserved to the Commissioner"); *Vertigan*, 260 F.3d at 1049 ("[i]t is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity"). The ALJ is responsible for assessing a claimant's RFC based on the record as a whole. *See* 20 C.F.R. § 416.945(a).

As long as an ALJ's decision is supported by substantial evidence, "reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (*citing Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir.2005)).

**II. Whether the ALJ properly weighed and discounted Dr. Ajayi's Medical Opinion**

The Court finds the ALJ applied the correct legal standards and made conclusions supported by substantial evidence when discounting Dr. Ajayi's opinion. The ALJ evaluated and weighed opinion evidence from Adekunle Ajayi, M.D., and properly discounted Dr. Ajayi's opinions regarding Plaintiff's functional limitations. AR 44.

In evaluating medical opinion evidence, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, when a medical source provides an opinion, an ALJ will consider:

(1) how well the source supported his opinion using objective medical evidence and explanations;

(2) how consistent the opinion is with the evidence from other medical and nonmedical sources;

(3) the length, purpose, and extent of the source's relationship with the claimant and the frequency of any examinations;

(4) the source's specialty; and

(5) other factors, including the source's familiarity with the claimant's other medical evidence and Social Security disability program policies.

20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors for determining a medical opinion's persuasiveness are supportability and consistency. 20 C.F.R. §§ 404.1520c(b), 416.920c(b); *see also Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022). Significantly, to reject a medical opinion, an ALJ only needs to provide an explanation that is supported by substantial evidence. *Woods*, 32 F.4th at 787 ("[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be

supported by substantial evidence.").

The ALJ gave clear and legitimate reasons for why she did not fully agree with Dr. Ajayi's opinion. AR at 42-44. Dr. Ajayi indicated that the Plaintiff has post-traumatic stress disorder.  Dr. Ajayi treated plaintiff for severe anxiety and paranoia.  *Id.* at 44.  The ALJ noted that Dr. Ajayi's opinion was internally inconsistent and instead gave significant weight to Dr. Short's opinion and accepted his conclusion that Plaintiff could sustain attention and concentration of simple tasks.  AR at 44. Dr. Short noted that Plaintiff would have moderate difficulty interacting with supervisors, peers, and the public. (*Id.*).

**III. Whether the ALJ  failed to properly consider the period when Plaintiff complained that his neck and back pain was worse.**

The ALJ stated that Plaintiff's alleged limitations from back, neck, and arm pain were non-severe.

Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A). A Social Security disability claimant has the burden to prove his disability. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

At step two of the sequential evaluation process, a claimant must prove that he has an impairment that is so severe that it "significantly limits [his] physical and mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."), 416.922(a) (same).

Substantial evidence supports the ALJ's conclusion for three reasons.

First, although Plaintiff argues that his alleged impairments "satisf[ied] the durational requirement of the [Social Security] Act," Motion at 16, the ALJ recognized that Plaintiff's condition had significantly improved less than twelve consecutive months from its onset (AR 38). Indeed, from August 2016, Plaintiff only received minimal treatment for his musculoskeletal complaints:

• August 2016: Plaintiff attended a follow-up visit with his doctor and was continued on "conservative treatment" and medication. (AR 425)

• November 2016: Plaintiff attended a follow-up visit with his doctor and was continued on "conservative treatment" and medication. (AR 423);

• September 2017: Plaintiff attended a follow-up visit with his doctor. He reported that his pain "had been adequately controlled with intermittent use of medications" but had gotten "gradually worse within the last month or so." (AR 421);

• October 2017: Plaintiff attended a follow-up visit with his doctor and was continued on "conservative treatment" and medication. (AR 419);

• October 2020: Plaintiff had MRIs of his left wrist, cervical spine, and lumbar spine, with only minimal findings. (AR 38-39, 433-37). The record does not contain any evidence of follow-up treatment. (See generally AR 348-557)

There is no record evidence that Plaintiff received treatment for his alleged musculoskeletal impairments between November 2016 and September 2017, between October 2017 and October 2020, or after October 2020. (See generally AR 348-557). At most Plaintiff can prove that he had alleged musculoskeletal impairments: (1) between April 2016 and November 2016; (2) between approximately August 2017 and October 2017; and (3) in October 2020. Those periods do not meet the Social Security Act's requirement that an impairment last "for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 423(d)(5)(A), 1382c(3)(A).

Second, under the SSA rules applicable to Plaintiff's claim, a finding of severity at step two "must be determined [based] on medical evidence." Social Security Ruling ("SSR") 85-28: Titles II & XVI: Medical Impairments that Are Not Severe, available at 1985 WL 56856, at *3. Plaintiff did not meet his burden to produce medical evidence showing that he had a severe, medically-determinable impairment. On August 12, 2016, Plaintiff's cervical, thoracic, and lumbar spine were within normal limits with no signs of spasm, tenderness, or edema. (AR 38, 501). Plaintiff's ranges of motion in the cervical, thoracic, and lumbar spine were all within normal limits, and all cervical, lumbar, and shoulder orthopedic tests were negative. (AR 502-03). Plaintiff had normal coordination, alternating movements, reflexes, and dermatomes, and he was able to walk on his heels and tiptoe very well. (AR 38, 503).

Given those medical findings, Plaintiff's medical records from August 16, 2016, November 2016, September 2017, and October 2017 did not establish that Plaintiff had a severe impairment. Instead, they merely repeated, verbatim, the cervicothoracic spine, lumbar, and neurologic exam findings from Plaintiff's July 2016 medical examination. (Compare AR 428 with AR 419, 421, 423, 425). Those old, restated July 2016 "findings" do not undermine the findings from Plaintiff's August 12, 2016 examination and do not meet Plaintiff's burden to prove a severe impairment. ECF No. 21 at 13.

Third, Plaintiff's treatment was conservative in nature, consisting primarily of chiropractic therapy and medication. (AR 39, 419, 421, 423, 425, 504). *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (describing physical therapy as conservative treatment); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (prescription of only conservative treatment suggests a lower level of both pain and functional limitation). Based on that, and the facts above, the ALJ reasonably concluded that Plaintiff did not prove that his alleged musculoskeletal impairments were severe. (AR 38-39).

Accordingly, and for good cause shown,

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and/or Remand (ECF No. 17) is DENIED, and the Commissioner's Cross-Motion to Affirm (ECF No. 21) is GRANTED.

The Clerk of Court is directed to enter judgment in favor of defendant.

DATED this 27th day of March 2023.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE